FOURTH DIVISION
FILED: October 26, 2006

1-05-2098

| | | |
|---|---|---|
| IRENE E. SIMICH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | No. 02 L 16432 |
| | ) | |
| EDGEWATER BEACH APARTMENTS | ) | |
| CORPORATION, an Illinois Corporation, | ) | Honorable |
| SUDLER AND COMPANY, and KENNETH | ) | Ralph Reyna |
| ORTIZ, | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE MURPHY delivered the opinion of the court:

On June 16, 2002, plaintiff, Irene C. Simich, suffered multiple injuries after tripping over a pneumatic hose and falling near the garage entrance of her residence at the Edgewater Beach Apartments, 5555 North Sheridan Road, Chicago, Illinois. Plaintiff filed a complaint sounding in negligence against defendants Edgewater Beach Apartments Corporation (Edgewater), the property owner, Sudler and Company (Sudler), the property management company, and defendant Kenneth Ortiz, property manager for Sudler. On January 27, 2005, the jury returned a verdict in favor of defendants.

Plaintiff timely filed a posttrial motion and now appeals the verdict with respect to

defendants Edgewater and Sudler. Plaintiff argues: (1) that the trial court erroneously found Sudler to be an agent of Edgewater and denied plaintiff's proposed general negligence instruction for Sudler; (2) that Illinois Pattern Jury Instruction, Civil, No. 120.08 (2005) is defective and prejudicial; (3) that the court improperly granted defendants' motion *in limine* refusing the testimony of George Maniates and evidence of subsequent remedial measures; (4) that defense counsel's closing argument was not derived from evidence produced at trial and was therefore improper and prejudicial; and (5) that the jury verdict was contrary to the manifest weight of the evidence. For the reasons that follow, we reverse the jury verdict and remand this matter for a new trial.

## I.  BACKGROUND

Edgewater Beach Apartments is a 307-unit property owned by Edgewater, a shareholder cooperative controlled by a 15-member board of directors (board). A shareholder resident is qualified to serve as a board member after being a shareholder resident for a minimum of two years. Defendant Sudler has been managing the property since it was hired by the board in 1995. Sudler's on-site property manager was Ken Ortiz, assisted by Adora Manalo.

In 1978, plaintiff and her husband entered into a proprietary lease (lease) whereby they became shareholder residents of the cooperative. The lease includes 16 separate covenants, one of which provides "[n]o provisions, milk, ice, marketing, groceries or like merchandise shall be taken through the front door of the building." On May 1, 1992, the board issued a memorandum noting this provision and reminding shareholders to utilize alternative entrances to carry in packages or groceries.

There are three entrances located at the property - the front lobby, a service entrance located on the north side of the building, and a garage ramp located on the south side of the building. Residents and visitors may enter the lobby doors with a small parcel, handbag, briefcase or plastic grocery bag. As noted above, when carrying larger loads, residents and visitors are to utilize one of the two other entrances.

When residents carried groceries or packages covered by the covenant, they typically used the garage entrance as it was easier to gain access and safer than the service entrance. There is a wide concrete drive which slopes down to the garage with a pneumatic hose on the ground of the right side of the driveway which activates the garage door for entering automobiles. Pedestrian shareholders could either jump or step on the pneumatic hose to activate the door, or ring a doorbell and wait for an employee to open the door.

### Accident of June 16, 2002

On June 16, 2002, plaintiff, 78 years old at the time, walked approximately one mile to the grocery store and returned home with a purchase of three pounds of meat. Plaintiff, while carrying her purchase, intended to enter the building through the garage entrance, which she had testified to using countless times without incident. However, upon walking down the drive, plaintiff tripped over the pneumatic hose on the ground.

An ambulance was called and plaintiff was taken to Weiss Hospital, where she was admitted for treatment of a fractured left wrist, dislocated right shoulder, and fractured left periorbital. Dr. John O'Keefe, an orthopedic surgeon at Weiss Hospital, testified that he treated plaintiff. Plaintiff presented with multiple fractures of her left wrist, dislocation of her right

shoulder, and ecchymotic hematoma around the left periorbital area. Plaintiff's wrist was splinted and aligned, surgery was performed on her right shoulder and the doctor attended to her eye trauma. After two months including six weeks of therapy, Dr. O'Keefe determined that plaintiff had a probable rotator cuff tear and an orbital fracture and recommended surgery to repair an injury to her left thumb.

On December 31, 2002, plaintiff filed a personal injury lawsuit against defendants. Plaintiff alleged that Edgewater, Sudler and Ortiz were jointly and severally liable for her injuries. Plaintiff claimed that each defendant breached its individual duty to maintain the premises in a safe condition. She argued that their negligence in maintaining the property, in particular the pneumatic hose at the garage entrance, was the proximate cause of her injuries.

Pretrial Motions

On June 23, 2004, defendants filed a motion for summary judgment. Defendants argued that the danger posed by the pneumatic hose was open and obvious. Furthermore, based on plaintiff's continual use of the entrance, defendants argued that she clearly knew of the existence of the hose.

Following a hearing on defendants' motion, the circuit court entered a written order denying the motion. The court found that defendants clearly owed plaintiff a duty of care and that the small diameter hose was not an open and obvious condition. Furthermore, the court opined that even if the condition were considered open and obvious, the distraction exception would apply under the facts to overcome the motion for summary judgment. Defendants filed a motion to reconsider based on a claimed misapplication of Illinois law, which was denied and the

matter was set for trial.

Both parties filed several motions *in limine* to exclude certain testimony and arguments from trial. Plaintiff argued that the trial court erred in granting defendants' motions *in limine* barring testimony regarding the garage ramp signage and pavement and subsequent remedial measures to the ramp area. In particular, the trial court barred the testimony of plaintiff's witness George Maniates, a board member who was to testify to the conditions of the entrances and board discussions regarding the same.

Jury Trial

At trial, plaintiff testified on her own behalf. Plaintiff admitted to seeing the hose before tripping, but could not provide more detail regarding how she had fallen. She testified that she did not jump on the pneumatic hose, but it must have tangled into her feet somehow. Plaintiff admitted that she never requested that the board or Sudler remove or change the hose. Further, plaintiff testified that she had never considered the hose a danger prior to the date in question.

Rosemarie Craig, a 20-year shareholder resident at Edgewater Beach Apartments, testified to how residents would utilize the garage entrance. Craig testified that residents could activate the garage door by jumping on the pneumatic hose or ring the doorbell and wait for an employee to open the door. On May 2, 2002, after a walk with her husband, Craig activated the garage door by jumping on the pneumatic hose, but fell to the ground when her feet got tangled up in the hose. Craig did not call an ambulance, but went back to her apartment and iced her leg. She later went to the hospital, where doctors discovered that Craig had fractured her right shin. Although she later informed several residents how the injury occurred, Craig did not report her

injury to defendants or the board, nor did she take any legal action.

Adora Manalo, Sudler's on-site property manager at Edgewater Beach Apartments from April 2001 to September 2004, testified to the condition of the property and her duties. Manalo testified that she attended the monthly meeting of the board of directors. The board, through the board president, directed her and Sudler with respect to operations and maintenance issues. Manalo emphasized that her interaction was mostly with the board president and all direction as to what projects to implement would come directly from the board president to either her or Ortiz.

Manalo affirmed that either the service or garage entrances were to be used if residents were unloading large parcels or more than a bag or two of groceries. Manalo further testified that she considered the pneumatic hose at the garage entrance and the wooden ramp at the service entrance to be tripping hazards. However, she did not believe the conditions rose to the level of a possible safety issue and never reported same to management. Furthermore, Manalo testified that she never received complaints from any residents about dangerous conditions at either entrance.

Jury Instructions

After the close of testimony, the trial court considered the parties' proposed jury instructions. Plaintiff submitted two separate sets of proposed instructions, one for each defendant. For Edgewater, plaintiff submitted instructions with respect to duty and the burden of proof for claims against an owner or occupier of land, Illinois Pattern Jury Instructions, Civil, Nos. 120.02 and 120.08 (2005) (hereinafter IPI Civil (2005)). For Sudler, plaintiff submitted the

pattern instructions on duty, burden of proof and the elements for a general negligence claim, IPI Civil (2005) Nos. 10.01, 20.01 and 21.02.

During the jury instruction conference, defendants contended for the first time that Sudler was an agent of Edgewater; thus, only the owner and occupier instructions were proper to submit to the jury for both parties. Defense counsel, who represented both Edgewater and Sudler, argued that Sudler admitted its role as agent for Edgewater. Defense counsel further argued that the testimony at trial by Manalo indicated that she took direction from the board. Manalo further testified that the board maintains the building and decides what needs to be fixed on the property and what changes are to be made.

Over plaintiff's objection, the trial court found that Sudler was an agent of Edgewater and the jury was not presented with that question. Plaintiff's proposed separate general negligence instructions for Sudler were also denied. Therefore, the premises liability instruction for owners and occupiers of land, IPI Civil (2005) No. 120.08, was given to the jury for both defendants.

Closing Arguments and Posttrial Motions

During closing arguments, defense counsel noted that plaintiff admittedly had made "countless" trips down the ramp to the garage entrance and had never tripped before the incident in question. Counsel then noted that "not one single person has tripped on that hose as described by Ms. Simich." Finally, based on the number of residents at the apartments, defense counsel completed some rough calculations to estimate that over a 20-year period, 146,000 trips had been made by residents down the garage ramp without incident.

Plaintiff's counsel objected to these comments, arguing that no evidence had been

presented at trial that there were no injuries over such a time period. The trial court overruled plaintiff's objection. Specifically, the trial court noted that the jury had heard the evidence and would rely on the evidence for its decisions and that arguments by counsel were not evidence. Plaintiff timely filed a posttrial motion requesting a new trial, which was denied, and this appeal arguing the aforementioned issues.

## II. ANALYSIS

### A. Determination of Agency

Plaintiff first claims that the trial court erred in it's determination that Sudler was an agent of Edgewater. Plaintiff argues that the issue of agency was only raised at the jury instruction conference, after evidence had been concluded, and resulted in crucial decisions regarding proposed jury instructions. In particular, the finding that Sudler was an agent of Edgewater resulted in a jury instruction with respect to Sudler based on the duty and burden of proof for premises liability, not the simpler common law negligence instruction that plaintiff proposed.

As noted by plaintiff, if an agency relationship is indisputable, the issue is not a question only for the trier of fact. *Gasbarra v. St. James Hospital*, 85 Ill. App. 3d 32, 43 (1979). Where the relationship is so clear as to be indisputable, the trial court may determine that an agency relationship exists as a matter of law. *Amigo's Inn, Inc. v. License Appeal Comm'n*, 354 Ill. App. 3d 959, 966 (2004). Therefore, these questions are subject to a *de novo* standard of review.

Plaintiff states that the typical argument for the existence of an agency relationship is asserted by a party wishing to impose liability upon a principal. In this case, however, defense

counsel asserted, and admitted, an agency relationship, ostensibly to shield Sudler from a general

negligence claim.  Plaintiff argues that defendants' admission does not close the issue.  Instead,

plaintiff concludes that the question of agency was not indisputable from the evidence presented

and remained a question of fact for the jury that must be proven by a preponderance of the

evidence.  *Israel v. National Canada Corp.*, 276 Ill. App. 3d 454, 459 (1995).

Defendants counter that, beyond their admission, the record clearly demonstrated that

Sudler is an agent of Edgewater and, therefore, the jury instructions given comport with the law.

Even if an error was made by the trial court, defendants argue that the record demonstrates that

no substantial prejudice resulted and the judgment should not be disturbed.  See *Belleville*

*Toyota, Inc. v. Toyota Motor Sales, USA*, 199 Ill. 2d 325, 364 (2002).

Defendants rely primarily on two factors for asserting that the agency relationship

between Sudler and Edgewater was clear.  First, they note defense counsel's admission during

the jury instruction conference that Sudler stood in an agency relationship with Edgewater.

Second, they argue that the testimony of Manalo established an indisputable agency relationship.

Defendants further argue a complete lack of evidence presented by plaintiff that Sudler was an

independent contractor and not an agent.

Although there is no rigid rule for determining whether an agency or an independent

contractor relationship exists, the four major factors to consider are: (1) the right to control the

manner in which work is performed; (2) the method of payment and whether taxes are deducted;

(3) the level of skill required to perform the work; and (4) furnishing of necessary tools, materials

and equipment.  *Lang v. Silva*, 306 Ill. App. 3d 960, 972 (1999).  The right to control the manner

in which work is performed is considered the "hallmark of agency." *Kaporovskiy v. Grecian Delight Foods, Inc.*, 338 Ill. App. 3d 206, 210 (2003). Conversely, an independent contractor undertakes to produce a certain result, but is not controlled as to how that result is achieved. *Lang*, 306 Ill. App. 3d at 972.

In this case, Manalo testified that she was employed by Sudler to manage the Edgewater property. Sudler was under contract with Edgewater to perform management duties, including oversight of the maintenance of common and exterior areas of the building. The contract between Edgewater and Sudler was not presented at trial.

Manalo was one of two Sudler employees who worked at the apartment building and she was supervised by a Sudler employee, Ken Ortiz. Ortiz was the liaison between Sudler and the board, but both Manalo and Ortiz would attend board meetings. Manalo's testimony on cross-examination cited by defendants, and upon which they heavily rely for their agency argument, went as follows:

> "DEFENSE COUNSEL: And can you describe with a little bit more detail your duties and responsibilities when you were the property manager at 5555 North Sheridan?
>
> MS. MANALO: To manage the staff and maintain the property, operation and maintenance of the property, and manage the projects there [sic] were going on. There was a series of renovation projects that were going on while I was on site.
>
> DEFENSE COUNSEL: Would you then coordinate with the contractors?

MS. MANALO: I would.

DEFENSE COUNSEL: Describe for me the interaction you had with the Edgewater Beach Apartment Corporation in your roll as a property manager.

MS. MANALO: I would meet with the board of directors monthly. My - - we would implement at their direction, but the direction would solely come from the board president. My interaction would be mostly with the board president.

DEFENSE COUNSEL: Did you generally take your orders from the board president?

MS. MANALO: Yes.

*** 

DEFENSE COUNSEL: ... What entity actually maintains the building? Who decides what to fix and what not to fix, what changes to be made, and what changes not to be made?

MS. MANALO: The board of directors.

DEFENSE COUNSEL: Do you take direction from them?

MS. MANALO. Yes, but through the board president."

Upon redirect examination by plaintiff's counsel, the following testimony of Ms. Manalo was elicited:

"PLAINTIFF'S COUNSEL: Now, you were asked questions about the board of directors. If Sudler and Company saw a safety hazard, a tripping hazard that they thought a resident might get injured on, whether it's a ramp, they had a

responsibility to see that that was corrected, correct?

MS. MANALO: Yes.

PLAINTIFF'S COUNSEL: And they should report to the board if they couldn't do it themselves. If you didn't have the funds or the manpower or those things, a report should be made to the board, we have this problem, it needs to be corrected, and here is what we need to do to correct it. That is partly the responsibility of the management company, correct?

MS. MANALO. Yes.

PLAINTIFF'S COUNSEL: Okay. And if you do that, and the board then says forget it, we don't want it, you have carried out and fulfilled your responsibility as the property manger, correct?

MS. MANALO. Yes."

Accordingly, Manalo's day-to-day duties were to manage the Edgewater staff who were hired and paid by Edgewater. In particular, Manalo would instruct the staff to act, including fixing unsafe conditions on the property. Manalo testified that she felt it was her, and Sudler's, obligation to fix unsafe conditions on the property, even if unreported. With respect to the pneumatic hose, Manalo also testified that she felt it posed a tripping hazard but was not unreasonably dangerous and that she had never received complaints that it was hazardous.

As this court noted in *Villa v. Arthur Rubloff & Co. of Illinois*, 183 Ill. App. 3d 746 (1989), there is little case law on the precise agency question at issue. Most cases considering property management companies concern the scope of agency, not the fact of agency itself. In

12

*Villa*, the plaintiff only argued on appeal that the defendant was a subcontractor and not an agent. This court denied the untimely argument, agreeing that the property manager was clearly an agent of the owner. The evidence presented showed that the defendant and the property owner entered into a management agreement, under which the defendant specifically would manage a shopping center as the owner's agent. *Villa*, 183 Ill. App. 3d at 749.

Under the agreement in *Villa*, the defendant was authorized to lease storefronts (with the owner's prior written approval); collect rentals; employ, pay and discharge all employees required to maintain the property; to make ordinary repairs and purchases; and pay utilities from collected monies. *Villa*, 183 Ill. App. 3d at 748. Citing to the Restatement (Second) of Agency, the *Villa* court noted that it is inferred that a general grant of authority to manage a business includes duties to make contracts, to employ, supervise and discharge employees, to receive and make payments for the principal, and to direct ordinary operations. Furthermore, the court noted that an agent can be in charge of the principal's entire business or a portion thereof. *Villa*, 183 Ill. App. 3d at 750, citing Restatement (Second) of Agency §73 (1957).

As in *Villa,* here there is evidence of an agency relationship between Sudler and Edgewater; however, it cannot be said that it is so obvious or overwhelming to be considered a matter of law. As in *Villa*, Manalo and Ortiz, on behalf of property manager Sudler, managed the property. Ortiz or Manalo would meet monthly with the board, generally taking orders from the board president to complete tasks as required. Manalo was granted authority to complete these tasks with minimal to no oversight.

However, unlike in *Villa*, there is no contract of record stating that this was an agency

relationship with a grant of general control. There is no evidence of payment or receipt of any monies by Sudler. Further, testimony revealed that all employees were hired and terminated by Edgewater. It is clear by the testimony at trial that Sudler and Manalo had control over implementing at least some maintenance projects, but not a general grant of authority. If projects were labor or cost intensive, Edgewater controlled decisions, though the extent of that control remained largely in question.

Furthermore, inquiries of both parties by this court underscore the lack of clarity on this issue. Questioned on whether Sudler had the wherewithal, for example whether they had the tools, manpower or funding, to complete a project such as removing the pneumatic hose, the parties did not know. Likewise, it was unknown whether such a project would require board oversight, or if Sudler had the authority to undertake such efforts.

While it cannot be said that plaintiff conclusively proved that Sudler was an independent contractor, considering the evidence of record, it cannot be said that the four factors for agency outlined in *Lang* were overwhelmingly evident to allow a determination either way as a matter of law. As more fully explained in discussion of the jury instruction issue below, the trial court's finding during the instruction conference that an agency relationship existed between Edgewater and Sudler constituted reversible error. On remand, more evidence must be presented developing the relationship between Sudler and Edgewater in order for the trial court to find an agency relationship as a matter of law. The four factors in *Lang* must be addressed, or overwhelming evidence of less than all four is required. Alternatively, as in *Villa*, a contract or management agreement clearly outlining an agency relationship could be introduced to allow a determination

as a matter of law. Otherwise, the law is clear that an agency relationship is a question of fact for the jury.

### B. Jury Instructions With Respect to Defendant Sudler

Plaintiff contends that the trial court committed reversible error by instructing the jury on the wrong standard of care and that the cause must be remanded for a new trial. *Esser v. McIntyre*, 169 Ill. 2d 292, 302 (1996). Specifically, plaintiff argues that her request for IPI Civil (2005) No. 21.02 should have been given with respect to Sudler because it was not an owner or occupier of the property subject to the lesser premises liability standard under IPI Civil (2005) No. 120.08.

The determination of what standard of care a party owes another is a question of law. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 445 (1996). A particular jury instruction given by the trial court is proper if it is sufficiently clear, fairly and correctly states the law, and is supported by some evidence in the record. *Rios v. City of Chicago*, 331 Ill. App. 3d. 763, 776 (2002). In determining whether jury instructions were inadequate, this court will remand for a new trial on that basis only if the trial court clearly abused its discretion. *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1087 (1990). Likewise, the trial court's determination as to what issues are raised by the evidence will be disturbed only if the court abused its discretion. *Bryant v. LaGrange Memorial Hospital*, 345 Ill. App. 3d 565, 573 (2003). Not only are the pattern jury instructions preferred, if applicable, the IPI instruction must be given. *Hobart v. Shin*, 185 Ill. 2d 283, 294 (1998).

1. *Whether the trial court instructed the jury on the proper standard of care*

15

First, plaintiff argues that Sudler was an independent contractor and subject to the general negligence standard outlined under IPI Civil (2005) No. 21.02. Even if the trial court properly determined agency in this case, plaintiff asserts that the premises liability jury instructions were improperly applied to Sudler. Plaintiff argues that there is no support in Illinois law for the position that the owner or occupier burden of proof for negligence may be applied under an agency theory. Rather, plaintiff contends that the law is clear that, for liability under a premises liability theory, a party must be an owner or occupier of the property in question. *Kotecki v. Walsh Construction Co.*, 333 Ill. App. 3d 583, 589 (2002). To be considered an owner or occupier, and for a duty to arise under the Act, it is clear that "the defendant must possess and control the real property on which the injury occurred." *Kotecki*, 333 Ill. App. 3d at 589, citing *Godee v. Illinois Youth Soccer Ass'n*, 327 Ill. App. 3d 695, 699 (2002).

Plaintiff asserts that it is clear that Sudler is not an owner of the property so as to fall under the owner and occupier requirement for premises liability. Plaintiff contends that, as under *Esser*, Sudler did not occupy the land with the intent to control the land to be considered an occupier. *Esser*, 169 Ill. 2d at 302. Therefore, on its own, Sudler did not fall under the premises liability standard and was subject to liability under general negligence standards.

Plaintiff further argues that no court has ever held that the burden of proof in claims against an agent of an owner or occupier is determined by the premises liability standard. Plaintiff continues that agents are liable for their own torts, while the principal is liable for its agent's torts if done within the scope of their agency relationship. *Brubakken v. Morrison*, 240 Ill. App. 3d 680, 686 (1992); IPI Civil (2005) No. 50.01. Therefore, she concludes that Sudler

had a common law duty of reasonable care in maintaining the property separate and apart from any duty Edgewater owed plaintiff as owner of the property. Plaintiff claims that she was prejudiced by the use of the more exacting standard of care under premises liability law.

Defendants argue that the cases cited by plaintiff are distinguishable and have no application to the facts of this case. Defendants claim that *Esser* did not involve issues of agency, but only involved the determination of whether a vacationer was an occupier of a common area of a rented home. They argue that *Kotecki* involved issues of construction related injuries, and again, no agency issues. Defendants argue that *Israel* involved motions to dismiss claims for fraud and intentional interference with contractual relations and not premises liability.

Defendants also claim that the Premises Liability Act (Act), (740 ILCS 130/1 *et seq.* (West 2004)), and relevant jury instructions apply equally to an agent of an owner or occupier as well as to the direct owner. Defendants do not cite to any authority for this argument in their brief. However, as support during oral argument, defendants referenced the committee comments to IPI Civil (2005) No. 120.08. IPI Civil (2005) No. 120.08, at issue and fully addressed in the next section, is the jury instruction that was recently created to combine the issues and burden of proof instructions for premises liability cases. Defendants requested and the court gave IPI Civil (2005) No. 120.08, for both Edgewater and Sudler. Defendants highlight that the comments state that, for cases where there is a dispute as to ownership of the property, "[f]irst, the defendant, [owned] [controlled] [managed] the property," should be added to the instruction. Defendants offer that the use of "manages" in the notes to IPI Civil (2005) No. 120.08 further supports their argument that agents such as property manager Sudler fall under

17

this instruction.

However, from the record, there is no dispute as to ownership of the property and it is clear that Sudler is neither an owner nor occupier of the Edgewater Beach Apartments. Sudler maintains one to two employees on the property and coordinates the maintenance staff on the property. There was no evidence that Sudler maintained possession and control over the property. As the court improperly determined that Sudler was an agent, that theory fails to support defendants' contention that the Act applies to agents as well as principals. The comments to IPI Civil (2005) No. 120.08 also fail to support defendants' position because that language is only to be used in the event of a dispute over the ownership of the property, which is not the case here.

We agree with plaintiff that even if agency had been properly established, that does not lead to the use of premises liability instructions for the agent. There is no doubt that Edgewater owned, possessed and controlled the property as outlined under *Esser*, *Kotecki* and *Godee*, to fall under the Act. Plaintiff alleged that Sudler was hired to undertake certain tasks for Edgewater and, as such, its duty to the residents at Edgewater arose from that agreement. Therefore, even assuming an agency relationship, Sudler would be liable for its own negligent acts. Accordingly, reversal and remandment is necessitated by the improper instructions rendered by the trial court.

2. *Illinois Pattern Jury Instruction Civil (2005) No. 120.08*

Plaintiff next contends that, even if IPI Civil (2005) No. 120.08 was properly given, the instruction itself is defective and/or misleading. Plaintiff argues that this instruction improperly: (1) requires the jury to determine a defendant's duty; (2) misstates Illinois law by limiting

landowner liability to a landowner's reasonable expectation that people on the property would not discover the danger; and (3) does not provide for the distraction or deliberate encounter exceptions to open and obvious conditions.

The question of a defendant's duty of care is a matter of law to be determined by the trial court and is reviewed *de novo*. *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140 (1990). In determining whether a duty is owed in a premises liability case, the court considers: (1) the likelihood of injury; (2) the reasonable foreseeability of such an injury; (3) the burden of guarding against such an injury; and (4) the consequences of placing that burden on a defendant. *Ward*, 136 Ill. 2d at 140. Plaintiff notes that section 343 of the Restatement (Second) of Torts sets out the factors used by courts when analyzing the foreseeability prong of the duty analysis under a premises liability theory. *Ward*, 136 Ill. 2d at 145-46. That section provides in full:

"A possessor of land is subject to liability for physical harm caused to his

invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the

condition, and should realize that it involves an unreasonable risk of harm to such

invitees, and

(b) should expect that they will not discover or realize the danger,

or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the

danger." Restatement (Second) of Torts §343 (1965).

As noted above, IPI Civil (2005) No. 120.08 is the jury instruction that was recently

created for premises liability cases. This instruction combines the instructions for premises liability issues and burden of proof into one instruction. IPI Civil (2005) No. 120.08 states in full:

"[In Count ___], [plaintiff's name] seeks to recover damages from the defendant [defendant's name]. In order to recover damages, the plaintiff has the burden of proving:

First, there was a condition on the [property] [land] [building] [other] which presented an unreasonable risk of harm to [people] [children] on the property.

Second, the defendant knew or in the exercise of ordinary care should have known of both the condition and the risk.

Third, the defendant could reasonably expect that [people] [children] on the property [would not discover or realize the danger] [or] [would fail to protect themselves against such danger].

Fourth, the defendant was negligent in one or more of the following ways:

a) _____,

b)_____,

c)_____,

Fifth, the plaintiff was injured.

Sixth, the defendant's negligence was a proximate cause of the plaintiff's

20

injury." IPI Civil (2005) No. 120.08.

Plaintiff claims that, by its own terms, IPI Civil (2005) No. 120.08 insulates a landowner from liability for all hazards except those dangerous conditions that the landowner could reasonably expect that people on the property would not discover or realize. Therefore, she argues that the instruction must be closely scrutinized to assure that it properly states the law.

Plaintiff points out that four of the six elements required under IPI Civil (2005) No. 120.08 are virtually identical to the foreseeability factors under section 343 of the Restatement. Plaintiff notes, however, that only one prong of the *Ward* duty analysis is considered under IPI Civil (2005) No. 120.08. As such, plaintiff argues that a jury may undertake an incomplete analysis of the duty owed by defendants and that they must analyze all four factors highlighted in *Ward*. Therefore, plaintiff argues that it is logically inconsistent to have the jury undertake an incomplete duty analysis at trial when that precise issue is determined as a matter of law by the court before the matter gets to trial. In this case, the question of defendants' duty was determined by the circuit court in earlier proceedings on defendants' motion for summary judgment and, plaintiff argues, that issue should not have been revisited by the jury.

Defendants counter that plaintiff has confused questions of duty and liability. Defendants argue, without citation to authority, that Illinois courts follow a two-prong inquiry for premises liability cases by examining first the question of a defendant's duty and then the liability of the defendant. Defendants note that landowner or occupier liability was defined by the supreme court in *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468 (1976), in the same manner as defined in section 343 of the Restatement, and now IPI Civil (2005) No. 120.08, quoted above, and this

definition remains unchanged.

Our supreme court recently noted that the question of duty in this area is "very involved, complex and indeed nebulous." *Marshall v. Burger King Corp.*, No. 100372, slip op. at 10 (June 22, 2006), quoting *Micher v. Brown*, 54 Ill. 2d 539, 545 (1993). The consideration of duty involves a complex question of fact, law, and public policy that the trial court must determine as a matter of law. This question is made more complex upon review by courts' use of the Restatement sections on the broader subject of liability to determine duty. *Marshall*, slip op. at 12. Indeed, for example, the *Ward* and *Bucheleres* courts specifically note that this section of the Restatement is informative to the question of duty. However, they both also note that the analyses undertaken for duty and liability are separate and distinct. *Bucheleres*, 171 Ill. 2d at 447.

The *Ward* court further bears this out by outlining a three-step process in common law negligence actions. First, the court must determine that the defendant owed a legal duty to the plaintiff. In making this determination, the court must examine the four factors found in *Ward*: (1) likelihood of injury; (2) reasonable foreseeability of injury; (3) burden of guarding against injury; and (4) consequences of burden. Second, if the court has determined that defendant owed plaintiff a duty, the trier of fact then considers the three factors under section 343 of the Restatement ((1) whether the defendant knew or by exercise of reasonable care would discover, and should realize, the condition presents an unreasonable danger to invitees; (2) whether the defendant should expect invitees will fail to discover or realize the danger or fail to protect themselves against it; and (3) whether the defendant failed to exercise reasonable care to protect

22

invitees against danger) to determine a defendant's negligence or lack thereof. Finally, the trier of fact also may consider the plaintiff's fault, if any, in determining whether the defendant was negligent. *Ward*, 136 Ill. 2d at 145-46.

As noted in *Bucheleres*, foreseeability of injury has never been dispositive of the issue of duty in negligence cases. *Bucheleres*, 171 Ill. 2d at 457. Further, the existence of a duty turns in large part on considerations of public policy. In fact, the supreme court has phrased the *Ward* factors that comprise the duty inquiry as "policy considerations." *Marshall*, slip op. at 11-12. Therefore, the court's determination that a defendant owes a plaintiff a duty is not a dispositive ruling on the facts so as to relieve the plaintiff of her burden of proving the factors enumerated in IPI Civil (2005) No. 120.08.

It follows that plaintiff's argument that IPI Civil (2005) No. 120.08 is an inaccurate statement of Illinois law fails. Plaintiff claims that the instruction improperly limits landowners' liability to situations where the landowner could "reasonably expect that people on the property would not discover or realize" the dangerous condition. Plaintiff argues that open and obvious conditions are not an absolute bar to liability, but that the instruction allows such a bar if the jury finds that the defendant "could reasonably expect" that the plaintiff knew of the condition. However, as can be gleaned from the citations above, IPI Civil (2005) No. 120.08 is an accurate recitation of Illinois law as found in *Genaust*, *Ward*, *Bucheleres*, and *Marshall*.

Finally, along the same lines, plaintiff argues that IPI Civil (2005) No. 120.08 does not allow for the distraction or deliberate encounter exceptions. *Ward*, 136 Ill. 2d at 145; Restatement (Second) of Torts, §343A, Comment F (1965). First, by the very language

specifically cited by plaintiff, the instruction takes into account the distraction exception. A distracted person "would not discover or realize the danger" and as a result fail to protect him or herself. Furthermore, throughout the opinion in *Ward*, the supreme court limited the distraction exception to reasonably foreseeable activities and injuries as the instruction does. As for the deliberate encounter exception, that issue is covered under IPI Civil (2005) No. 120.09; therefore, its absence does not render IPI Civil (2005) No. 120.08 invalid.

### C.  Barring Evidence of Subsequent Remedial Measures

While we have reversed the jury's verdict, we choose to address plaintiff's argument that the trial court erred in granting defendants' motion *in limine* to bar any testimony referring to documents and discussions regarding subsequent remedial measures as this issue is likely to arise during retrial. Plaintiff notes that the generally accepted rule is that post-occurrence remedial measures are inadmissible to prove negligence. *Schaffner v. Chicago & North Western Transportation Co.*, 129 Ill. 2d 1, 14 (1989). However, she argues that the evidence at issue was not evidence of a subsequent remedial measure. Even if it were, plaintiff argues that the actions were not taken by defendants or their agents, but by an informal floor committee of Edgewater's resident shareholders.

A challenge made to the trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Mulloy v. American Eagle Airlines, Inc.*, 358 Ill. App. 3d 706, 711 (2005). The trial court is vested with the discretion to determine the relevance and admissibility of this evidence regardless of whether it is expert or lay testimony. *Mulloy*, 358 Ill. App. 3d at 711-12. A trial court abuses its discretion only when no reasonable person would

agree with the trial court. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

Plaintiff argues that the trial court improperly barred the testimony of resident shareholder and floor committee chairperson George Maniates and any communications regarding his floor committee. The trial court barred testimony and meeting minutes as evidence of subsequent remedial measures by defendants. Plaintiff claims that the floor committee was an informal group that discussed issues, including the unsafe condition of the alternate entrances, at the apartment building. Therefore, plaintiff concludes that this was not the action of defendants, nor any evidence of subsequent measures but rather constituted evidence of knowledge of the hazard.

Defendants argue that the committee was an agent of Edgewater. Defendants point to the testimony of Manalo that the board president appointed committees to look at issues. Therefore, defendants claim that it is clear that the committee is an agent of Edgewater and if the evidence was admitted, it would have been an admission of negligence by Edgewater. Furthermore, defendants argue that if this testimony and correspondence were admitted, it would be duplicative of evidence established by other witnesses at trial.

The evidence at trial supports defendants' claim that the committee chaired by Maniates was an arm of the board for Edgewater and acted subsequent to plaintiff's accident on remedial measures at the property. While informal, the evidence established that Maniates was appointed by the board to discuss issues at the apartment complex, including the safety of the entrances, and report to the board. Subsequent remedial measures were taken with respect to the building entrance. It was within the trial court's discretion to bar this testimony regarding Edgewater's analysis of and action addressing the hazards posed by the hose. Furthermore, plaintiff's

argument that this evidence was necessary to show the hazard posed by the hose is hollow as that was clearly established by the testimony of Manalo, Simich and Craig and would be duplicative for that purpose. As we have reversed the jury verdict in this case, we need not discuss plaintiff's two final arguments.

## III. CONCLUSION

Accordingly, for the aforementioned reasons, the decision of the trial court is reversed.

This cause is remanded for a new trial consistent with the holdings herein.

Reversed and remanded.

QUINN, P.J., and CAMPBELL, J., concur.