# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Dowe v. Birmingham Steel Corp.*, 2011 IL App (1st) 091997

| | |
|---|---|
| Appellate Court Caption | DEBRA DOWE, Independent Administrator of the Estate of Sheena Dowe, Deceased, AMAUSAE A. DOWE, a minor, by and through his Custodial Guardian, DEBRA DOWE, SHALAINE JOHNSON, SHALAINE JOHNSON, as Mother and Next Friend of Jodeon Rouser, a Minor, ROBERT MUNSON, Independent Administrator of the Estate of Marie Alvina Munson, Deceased, KELLEY WHITAKER, Personal Representative of the Estate Jessica Lane Tickle, Deceased, MICHELLE PIETTE and WARREN PIETTE, MAX BONNIN, Personal Representative of the Estate of June Bonnin, Deceased, MAX BONNIN, as Father and Next Friend of Ashley Bonnin, a Minor, BILLY E. ADKINS, Personal Representative of the Estate of Helena R. Adkins, Deceased, BLANCHE R. JONES and DERRICK JONES, CHARLENE A. HEMPFLING, NANCY D. HAIGH, MARY MOSLEY, Individually and as Mother and Next Friend of Ashley Mosley, a Minor, JOHN S. VANT, Executor of the Estate of Virgil Vant, Deceased, JOHN S. VANT, Executor of the Estate of Leona Vant, Deceased, JOHN S. VANT, Executor of the Estate of Wendy Vant Deceased, MINNIE C. STEWART, RAY STEWART, JR., CEDRIC STEWART, RAY STEWART as Conservator of the Estate of Orran Stewart, Deceased, GAIL GORDON-ALLEN and AARON ALLEN, SARAH DUDLEY, GREGORY HERMAN, Individually, LISA D. HERMAN, Individually, LISA D. HERMAN, Mother and Next Friend of Kristen E. Herman, a Minor, Mother and Next Friend of Kaitlin G. Herman, a Minor, and Mother and Next Friend of David G. Herman, a Minor, NANCY M. SCHAFLE, DOLORES BELL and ROBERT BELL, SUASAN FALLS, JENNIFER FALLS, JOHN FALLS, ANDREA SHIDLE, JOSEPH SHIDLE, MARILYN SHIDLE, JOHN STOLFA, CAMILLE STOLFA, BLANCHE FORTUNE, Plaintiffs-Appellants and Cross-Appellees, v. BIRMINGHAM STEEL CORPORATION, Defendant-Appellee and |

Cross-Appellant.–NATIONAL RAILROAD PASSENGER
CORPORATION, d/b/a Amtrak, Plaintiff-Appellant and Cross-
Appellee, v. BIRMINGHAM STEEL CORPORATION, Defendant-
Appellee and Cross-Appellant (Melco Transfer, Inc., and John Stokes,
Defendants).

| | |
|---|---|
| District & No. | First District, First Division<br>Docket Nos. 1-09-1997, 1-09-2006 cons. |
| Filed | December 19, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a collision between a semi tractor-trailer and a passenger train at a crossing that resulted in multiple fatalities and injuries, plaintiff's notice of appeal from the entry of summary judgment against plaintiff was sufficient to confer appellate jurisdiction over all of the 31 other plaintiffs, even though the original purpose for consolidating the actions was to conduct discovery and motion practice related to liability, and the entry of summary judgment for the manufacturer of the steel being hauled on the truck was upheld on the grounds that the truck driver was not acting as the manufacturer's agent, plaintiffs failed to establish that the manufacturer had a duty to prevent the allegedly sleep-deprived driver from leaving the steel mill, and the transportation of an oversized load of steel did not create a "peculiar risk" of harm that would warrant ignoring the driver's status as an independent contractor. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 99-L-3194, 01-L-3100 cons.; the Hon. William D. Maddux, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael K. Demetrio, of Corboy & Demetrio, of Chicago, and Michael T. Reagan of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of Ottawa, for appellants.

David F. Ryan and Denise Keliuotis, both of Patten & Ryan LLC, and Robert J. Franco, Vincent P.Tomkiewicz, and Christopher M. Cano, all of Bollinger, Ruberry & Garvey, both of Chicago, for appellee Birmingham Steele Corp.

Susan K. Lang and Diane I. Jennings both of Anderson, Rasor & Partners, LLP, of Chicago, for appellee Amtrak.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion.

Presiding Justice Hoffman and Justice Karnezis concurred in the judgment and opinion.

## OPINION

¶ 1    This consolidated appeal arises out of a collision between a semi tractor-trailer and an Amtrak[1] passenger train at a railroad crossing in Bourbonnais, Illinois, on March 15, 1999, at approximately 9:47 p.m. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3    The tractor-trailer at issue was driven by John Stokes. Stokes is employed by Melco Transfer, Inc. (Melco). Melco is an independent carrier that employs drivers to haul goods for various companies. Just prior to the collision, Stokes had picked up a large load of 3/4-inch-thick, 60-foot-long steel reinforcing bars, commonly known as rebar, from the Birmingham Steel Corporation (Birmingham Steel). Rebar is a bar or rod of steel used to reinforce concrete. Stokes was scheduled to transport and deliver the rebar to Gem City Steel in Dayton, Ohio.

¶ 4    The Amtrak passenger train collided with the rear of the tractor-trailer as Stokes ignored flashing warning lights at the railroad crossing and attempted to drive through the crossing ahead of the oncoming train. The collision caused pieces of rebar to be thrown onto the tracks derailing the locomotives and most of the passenger cars. Eleven passengers were killed and many others were injured in the derailment and resulting fire.

---

[1]Amtrak is officially known as the National Railroad Passenger Corporation.

¶ 5 The accident led to the filing of numerous lawsuits that were litigated in the Northern District of Illinois and the circuit court of Cook County. In federal court, Debra Dowe and a number of other plaintiffs (Dowe plaintiffs) filed suit against Amtrak. *Dowe v. National R.R. Passenger Corp.*, No. 01 C 5808, 2003 WL 22383016 (N.D. Ill. Oct. 17, 2003). Amtrak, in turn, filed a third-party action for contribution against Birmingham Steel, Melco, and Stokes based on the theory that Stokes was acting as an agent for Birmingham Steel at the time of the collision thereby making the steel company vicariously liable for Stokes' negligent conduct.

¶ 6 Meanwhile, in the circuit court, Angela Wilson-McCray, suing individually and as the mother and next friend of her minor son, filed a single personal injury suit against Amtrak, Birmingham Steel, Melco, Stokes and various other entities. Amtrak removed the case to federal court. Wilson-McCray v. Stokes, No. 01 C 1929. Amtrak and Birmingham Steel filed third-party actions against each other for contribution alleging that the other was liable for the negligent acts of Stokes based on theories of agency.

¶ 7 The two federal cases were consolidated for pretrial purposes. *Wilson-McCray v. Stokes*, No. 01 C 1929, 2003 WL 22901569, at *1 (N.D. Ill. Dec. 9, 2003). Birmingham Steel moved for summary judgment on the consolidated federal cases.

¶ 8 During the pendency of the federal cases, Dowe and a number of other plaintiffs filed separate lawsuits in the circuit court against Birmingham Steel and the other defendants for personal injury, wrongful death, and survival claims. The separate lawsuits were consolidated in the circuit court for purposes of conducting discovery and motion practice. Dowe v. Birmingham Steel Co., No. 99 L 3194 (Cir. Ct. Cook Co.) Amtrak filed suit in the circuit court against Birmingham Steel, Melco, and Stokes for the economic losses it incurred as a result of the incident. National R.R. Passenger Corp. v. Birmingham Steel Corp., No. 01 L 3100 (Cir. Ct. Cook Co.)

¶ 9 Back in federal court, the district court granted partial summary judgment in favor of Birmingham Steel. In regard to the agency issue brought by Amtrak and Wilson-McCray, the district court determined that Birmingham Steel was entitled to summary judgment on all claims premised on the theory of agency after the court concluded that Stokes was not acting as Birmingham Steel's agent at the time of the accident. *Wilson-McCray v. Stokes*, 2003 WL 22901569, at *6.

¶ 10 The district court also found that Birmingham Steel was entitled to summary judgment regarding the claims made by Wilson-McCray that Birmingham Steel was liable for allegedly: overloading the tractor-trailer; placing nearby railcars in positions that obstructed Stokes' view of railroad traffic; failing to assist Stokes in safely leaving the steel mill; and negligently entrusting the load of steel to Stokes when it either knew or should have known that Stokes was too sleep-deprived to drive safely. The district court found that Birmingham Steel was entitled to summary judgment on these claims because Wilson-McCray failed to refute the steel company's contentions that it was not liable on these claims. *Wilson-McCray v. Stokes*, 2003 WL 22901569, at *2.

¶ 11 The district court further concluded, however, that Birmingham Steel was not entitled to summary judgment concerning Amtrak's cross-claims of direct negligence against

Birmingham Steel because Birmingham Steel's motion for summary judgment failed to address these claims, and its reply brief in which these claims were addressed, came too late. *Wilson-McCray v. Stokes*, 2003 WL 22901569, at *2. As a result, the district court held that Amtrak's cross-claims of direct negligence against Birmingham Steel remained pending for trial. *Wilson-McCray v. Stokes*, 2003 WL 22901569, at *6. Before these cross-claims could be tried, Amtrak settled the personal injury actions pending in federal court.

¶ 12     On July 1, 2009, the circuit court granted summary judgment in favor of Birmingham Steel and against Amtrak and the Dowe plaintiffs. The circuit court held that: Stokes was not acting as Birmingham Steel's agent at the time of the accident; the plaintiffs failed to establish a claim for negligent entrustment because they failed to show that Birmingham Steel had a duty to prevent an allegedly sleep-deprived Stokes from driving out of the steel mill with the load of steel; and the transportation of the oversized load of steel did not create a "peculiar risk" of harm to others such that Stokes' status as an independent contractor should be ignored.

¶ 13     However, the circuit court denied that portion of Birmingham Steel's motion for summary judgment premised on the doctrines of *res judicata* and collateral estoppel. The circuit court's resolution of Birmingham Steel's motion for summary judgment left remaining Amtrak's claims against Melco and Stokes.

¶ 14     Amtrak filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2006)), after the circuit court entered an order finding that there was no just reason to delay enforcement or appeal of its ruling granting summary judgment in favor of Birmingham Steel. The Dowe plaintiffs' notice of appeal and Birmingham Steel's notice of cross-appeal were timely filed pursuant to Illinois Supreme Court Rules 301 and 303(a)(3). Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303(a) (eff. June 4, 2008). These appeals were consolidated for our review. The following issues are presented on appeal.

¶ 15     Birmingham Steel argues that the notice of appeal filed by Debra Dowe on behalf of the Dowe plaintiffs was only sufficient to confer appellate jurisdiction over Debra Dowe, as the administrator of the estate of Sheena Dowe, deceased, and was insufficient to confer jurisdiction over the other Dowe plaintiffs. The steel company further contends that the circuit court erred in denying that portion of its motion for summary judgment premised on the doctrines of *res judicata* and collateral estoppel.

¶ 16     Amtrak contends that the circuit court erred in granting summary judgment in favor of Birmingham Steel because there were genuine issues of material fact as to whether Stokes was acting as the steel company's agent rather than an independent contractor when he drove his truck across the railroad crossing and collided with the train.

¶ 17     Amtrak and the Dowe plaintiffs argue that the circuit court erred in granting summary judgment in favor of Birmingham Steel because there were genuine issues of material fact as to whether Birmingham Steel negligently entrusted the load of rebar to Stokes and whether it should be held liable for the actions of Stokes under the principles set forth in sections 413, 416, and 427 of the Restatement (Second) of Torts (these sections contain exceptions to the general rule that an employer is not liable for the negligence of its independent contractor)

(Restatement (Second) of Torts §§ 413, 416, 427 (1965)). Finally, the Dowe plaintiffs contend that Birmingham Steel voluntarily assumed the duty to scrutinize its drivers and ensure that its product was safely secured on the trucks. Again, we affirm.

¶ 18                                             ANALYSIS

¶ 19    Birmingham Steel initially challenges our jurisdiction over the Dowe plaintiffs other than Debra Dowe. The steel company contends that the notice of appeal filed by Debra Dowe on behalf of the Dowe plaintiffs was only sufficient to confer appellate jurisdiction over Debra Dowe, as the administrator of the estate of Sheena Dowe, deceased, but was insufficient to confer jurisdiction over the 31 other Dowe plaintiffs.

¶ 20    Birmingham Steel argues that each of the 32 separate lawsuits originally filed in the circuit court retained its separate identity and that the order consolidating the cases for the purposes of discovery and motion practice did not deprive the cases of their separate identities. Birmingham Steel maintains therefore that separate notices of appeal were required to be filed under Rule 303 for each of the separate bodily injury lawsuits. We disagree.

¶ 21    Actions pending in the same court may be consolidated "as an aid to convenience, whenever it can be done without prejudice to a substantial right." 735 ILCS 5/2-1006 (West 2002). Our courts have recognized three different forms of consolidation: (1) where several cases are pending involving substantially the same subject matter, the court may stay the proceedings in all but one and then see whether the disposition of the one case may settle the others, thereby avoiding multiple trials on the same issues; (2) where several cases involve an inquiry into the same event in its general aspects, the cases may be tried together, but with separate docket entries, verdicts and judgments, the consolidation being limited to a joint trial; and (3) where several actions are pending that might have been brought as a single action, the cases may be merged into one action, thereby losing their individual identities, and be disposed of in one suit. *Black Hawk Motor Transit Co. v. Illinois Commerce Comm'n*, 383 Ill. 57, 67, 48 N.E.2d 341 (1943); *Turner v. Williams*, 326 Ill. App. 3d 541, 547, 762 N.E.2d 70 (2001).

¶ 22    Our review of the record indicates that even though the original stated purposes for the consolidation was to conduct discovery and motion practice as it related to liability, the consolidation was much broader and actually comes within the third category. To determine whether a particular consolidation was for disposition, the test is whether the cases might have been the subject of a single proceeding or could have been brought as one action. *Vitale v. Dorgan*, 25 Ill. App. 3d 941, 944, 323 N.E.2d 616 (1975).

¶ 23    Here, the circuit court consolidated the 32 separate bodily injury lawsuits for disposition by summary judgment. The circuit court's order granting summary judgment in favor of Birmingham Steel and against Amtrak and the Dowe plaintiffs applied to all of the consolidated cases and it gave rise to only one judgment to be appealed from.

¶ 24    If we accepted Birmingham Steel's position, this would go against the stated purpose of consolidation, which is to expedite the resolution of lawsuits, conserve time, and avoid duplicating efforts and unnecessary expenses. See *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1004-

05, 384 N.E.2d 682 (2008). We find that the notice of appeal filed by Debra Dowe on behalf of the Dowe plaintiffs was sufficient to confer appellate jurisdiction over the 31 other Dowe plaintiffs.

¶ 25    We also note that, as a procedural matter, Birmingham Steel's cross-appeal was improper. Our supreme court has held that "[a] party cannot complain of error which does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment." *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 386, 457 N.E.2d 9 (1983). In the proceedings below, the circuit court granted summary judgment in favor of Birmingham Steel as to all claims pending against it, giving it all of the relief asked for in the motion, and therefore its cross-appeal was improper. See *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418, 869 N.E.2d 195 (2007).

¶ 26    Turning to the merits of the appeal, Amtrak and the Dowe plaintiffs contend that the circuit court erred in granting summary judgment in favor of Birmingham Steel because a number of genuine issues of material fact remain in dispute. Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2000); *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50, 711 N.E.2d 773 (1999).

¶ 27    In ruling on the motion, the circuit court is required to construe all evidentiary material strictly against the movant and liberally in favor of the nonmovant. *Tolve v. Ogden Chrysler Plymouth, Inc.*, 324 Ill. App. 3d 485, 489, 755 N.E.2d 536 (2001). Our review of a circuit court's order granting summary judgment is *de novo*. *Sears Roebuck & Co. v. Acceptance Insurance Co.*, 342 Ill. App. 3d 167, 171, 793 N.E.2d 736 (2003).

¶ 28    Amtrak argues that granting summary judgment in favor of Birmingham Steel was improper because a genuine issue of material fact exists as to whether Stokes was acting as the steel company's agent rather than an independent contractor when he drove his truck across the railroad crossing and collided with the train. We must disagree.

¶ 29    The test of whether an individual is an agent or independent contractor is generally a question of fact for the trier of fact. *Doyle v. Shlensky*, 120 Ill. App. 3d 807, 821, 458 N.E.2d 1120 (1983). However, when the facts are not in dispute, the trial court is permitted to decide the issue as a matter of law and grant summary judgment. *Stewart v. Jones*, 318 Ill. App. 3d 552, 561, 742 N.E.2d 896 (2001).

¶ 30    Among the factors to be considered in determining this issue are: the right to control the manner in which the work is performed; the right to discharge; the method of payment; who provides the tools, materials, or equipment; the level of skill required to perform the work; and who deducts or pays for insurance, social security, and taxes on the employee's behalf. *Lang v. Silva*, 306 Ill. App. 3d 960, 972, 715 N.E.2d 708 (1999); *Wheaton v. Suwana*, 355 Ill. App. 3d 506, 511, 823 N.E.2d 993 (2005). No single factor is determinative, but the right to control the manner in which the work is performed is considered to be the most important factor. *Lang*, 306 Ill. App. 3d at 972; *Shoemaker v. Elmhurst-Chicago Stone Co.*, 273 Ill.

App. 3d 916, 920, 652 N.E.2d 1037 (1994); *Simich v. Edgewater Beach Apartments Corp.*, 368 Ill. App. 3d 394, 402, 857 N.E.2d 934 (2006) ("[t]he right to control the manner in which work is performed is considered the 'hallmark of agency' ").

¶ 31    In this case, the evidence establishes that Birmingham Steel did not retain the right to control the manner in which Stokes hauled steel from the steel mill. Stokes: chose his own route; controlled his own hours; provided and maintained his own equipment; was paid directly by Melco, which also paid his liability and cargo insurance; and performed his job pursuant to rules he received from Melco. In addition, Birmingham Steel had no authority to discharge Stokes from his employment with Melco.

¶ 32    Amtrak argues that an agency relationship was established between Birmingham Steel and Stokes through the following: the volume of hauling that Stokes performed for Birmingham steel; Stokes' assertion that he deemed himself to be Birmingham Steel's "house" truck; the fact that Stokes hauled all of Birmingham Steel's oversized loads of rebar; the fact that Melco had a written agreement with Birmingham Steel under which Melco exclusively assigned drivers and trucks; the fact that Birmingham Steel had written rules governing the conduct of drivers at the steel mill and the manner for loading the trucks; and the fact that Birmingham Steel had the right to terminate the services of a driver if it believed the driver was not performing the work in a safe manner, he was impaired, or it received a customer's complaint.

¶ 33    None of these factors gave Birmingham Steel the authority to control the manner in which Stokes hauled steel from the steel mill. See *Wilson-McCray v. Stokes*, 2003 WL 22901569, at *3-6. Rather, the evidence shows that no agency relationship existed between Birmingham Steel and Stokes.

¶ 34    Amtrak and the Dowe plaintiffs contend that genuine issues of material fact remain as to whether Birmingham Steel negligently entrusted the load of rebar to Stokes. They cite to the general rules of liability for negligent entrustment set forth in sections 307 and 308 of the Restatement (Second) of Torts.

¶ 35    Section 307 provides:

    "It is negligence to use an instrumentality, whether a human being or a thing, which the actor knows or should know to be so incompetent, inappropriate, or defective, that its use involves an unreasonable risk of harm to others." Restatement (Second) of Torts § 307 (1965).

¶ 36    The Dowe plaintiffs claim that in this case the "instrumentality" was a human being, Stokes himself. They argue that Birmingham Steel was negligent in using Stokes to transport the load of rebar when it knew or in the exercise of reasonable care should have known that he was too physically impaired by a lack of sleep to drive safely.

¶ 37    "There can be no recovery in tort for negligence unless defendant breached a duty owed." *Starr v. Ward*, 289 Ill. App. 3d 299, 304, 681 N.E.2d 1064 (1997). Therefore, the threshold inquiry is whether Birmingham Steel had a duty to prevent an allegedly sleep-deprived Stokes from leaving the steel mill with the load of rebar. Whether a duty exists is a question of law for the court to decide. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 197, 721 N.E.2d 605 (1999).

¶ 38    The Dowe plaintiffs allege that Birmingham Steel had such a duty stemming from its authority to refuse to load a truck or issue a bill of lading where it determined that a driver was too impaired to drive safely. We disagree. Under the circumstances in this case, we find that Birmingham Steel's authority to refuse to load Stokes' truck or issue a bill of lading did not create a duty on the part of the steel company to prevent Stokes from leaving the steel mill with the load of rebar based on his alleged impairment due to fatigue.

¶ 39    Deposition testimony was presented that Birmingham Steel had previously refused to load a truck because of a driver's impairment due to intoxication and drunkenness. However, there is no objective means of measuring fatigue like there is for alcohol and drug intoxication. And even if we assumed that fatigue was a factor in the accident, the evidence indicates that Stokes either did not know the extent of his own fatigue or he ignored the risk and continued driving despite experiencing symptoms of fatigue.

¶ 40    Stokes indicated that he was not tired at the time of the accident. Ms. Charlene L. Cannon, Birmingham Steel's shipping clerk, who was one of the last persons to see Stokes leave the steel mill prior to accident, testified at her deposition that Stokes told her that if he became tired he would pull off the road. Ms. Cannon testified that on previous occasions she had seen other drivers come to the steel mill looking tired, but that Stokes did not look tired. Moreover, Ms. Cannon had no information concerning the number of hours Stokes had worked prior to arriving at the steel company. In addition, evidence was presented that Stokes did not appear to be tired after the accident. Under these circumstances, Birmingham Steel should not be charged with having knowledge of Stokes' alleged impairment due to fatigue.

¶ 41    We also note that Stokes was an experienced trucker. He was therefore the person who was in the best position to assess whether he was too fatigued to drive safely. See, *e.g.*, *Behrens v. Harrah's Illinois Corp.*, 366 Ill. App. 3d 1154, 1157, 852 N.E.2d 553 (2006) ("[a]n employer should be able to presume that the person in the best position to avoid driving while excessively fatigued, the employee, will either ask for a ride from someone or pull off the roadway and rest if necessary"). "Accordingly, on these facts, we do not find that a legal duty existed on the part of Birmingham Steel for which a negligence claim could be properly asserted." *Martin v. Illinois Central R.R. Co.*, 2006-1495, at 6 (La. App. 4 Cir. 12/19/07); 974 So. 2d 741, 745.

¶ 42    Section 308 of the Restatement (Second) of Torts provides:

"It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." Restatement (Second) of Torts § 308 (1965).

¶ 43    Amtrak and the Dowe plaintiffs contend that Birmingham Steel was negligent in entrusting Stokes with the "activity" of driving the load of rebar out of the steel mill when it knew or in the exercise of reasonable care should have known that he was too physically impaired by a lack of sleep to drive safely. This argument fails for the same reason discussed above: Birmingham Steel's authority to refuse to load Stokes' truck or issue a bill of lading

did not create a duty on the part of the steel company to prevent Stokes from engaging in the "activity" of leaving the steel mill with the load of rebar based on his alleged impairment due to fatigue, where Birmingham Steel could not be charged with having knowledge of Stokes' alleged impairment and Stokes himself was in the best position to determine whether he was too fatigued to drive safely.

¶ 44    Amtrak and the Dowe plaintiffs next contend that summary judgment was improper because questions of fact exist as to whether Birmingham Steel should be held liable for the actions of Stokes under the principles set forth in sections 413, 416, and 427 of the Restatement (Second) of Torts.[2] These sections contain exceptions to the general rule that an employer is not liable for the negligence of its independent contractor. See Restatement (Second) of Torts § 409 (1965). The questions here are whether the transportation of an oversized load of steel over the highways was a peculiar risk within the meaning of sections 413 and 416 of the Restatement (Second) of Torts, or an inherently dangerous activity within the meaning of section 427 of the Restatement (Second) of Torts. We must answer in the negative.

¶ 45    The Restatement defines "peculiar risk" as follows:

"[A] risk differing from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the nature of the work done, which calls for special precautions. (See § 413, Comment *b*.) Thus if a contractor is employed to transport the employer's goods by truck over the public highway, the employer is not liable for the contractor's failure to inspect the brakes on his truck, or for his driving in

---

[2]Section 413 provides:

"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
 (a) fails to provide in the contract that the contractor shall take such precautions, or
 (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions." Restatement (Second) of Torts § 413 (1965).
Section 416 provides:

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." Restatement (Second) of Torts § 416 (1965).
Section 427 provides:

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger." Restatement (Second) of Torts § 427 (1965).

excess of the speed limit, because the risk is in no way a peculiar one, and only an ordinary precaution is called for. But if the contractor is employed to transport giant logs weighing several tons over the highway, the employer will be subject to liability for the contractor's failure to take special precautions to anchor them on his trucks." Restatement (Second) of Torts § 416 cmt. d, at 397 (1965).

¶ 46    Amtrak and the Dowe plaintiffs argue that Birmingham Steel was negligent in using nylon straps, rather than steel chains, to anchor the load of steel rebar to the flatbed trailer. We disagree.

¶ 47    The manner in which the load of rebar was anchored and secured to the flatbed trailer had nothing to do with the cause of the accident. The accident arose from Stokes' conduct in ignoring the flashing warning lights at the railroad crossing and attempting to drive through the crossing ahead of an oncoming train traveling at nearly 80 miles per hour, where the resulting collision caused pieces of rebar to be thrown onto the tracks derailing the train. In this case, the activity of transporting the oversized load of steel was not a peculiar risk within the meaning of sections 413 and 416 of the Restatement (Second) of Torts.

¶ 48    In addition, such activity was not inherently dangerous within the meaning of section 427 of the Restatement (Second) of Torts. Inherently dangerous "work involves the use of instrumentalities, such as fire or high explosives, which require constant attention and skillful management in order that they may not be harmful to others. *** It is not, however, limited to such highly dangerous activities. The rule applies equally to work which, although not highly dangerous, involves a risk recognizable in advance that danger inherent in the work itself, or in the ordinary or prescribed way of doing it, may cause harm to others." Restatement (Second) of Torts § 427 cmt. c, at 416 (1965). Transporting a properly secured oversized load of steel over the highway does not fall within this category.

¶ 49    The Dowe plaintiffs next contend that Birmingham Steel voluntarily assumed the duty to scrutinize its drivers and to ensure that its product was safely secured on the trucks. The Dowe plaintiffs maintain that Birmingham Steel assumed such a duty based on its authority to refuse to load a truck or issue a bill of lading where it determined that a driver was too impaired to drive safely. Again, we must disagree. There is no evidence that Birmingham Steel undertook any duty in regard to Stokes. Moreover, the record indicates that Stokes' negligent driving was the proximate cause of the accident, not the manner in which his truck was loaded or the load secured.

¶ 50    For the foregoing reasons, the judgments of the circuit court are affirmed.

¶ 51    Affirmed.